24-2019 Western Missouri Betty Grooms v. Judge Steven A. Privette, et al. Mr. Durey. May it please the court, David Durey for the appellant, Betty Grooms. This case raises three issues all under Rule 12b-6. The district court dismissed counts 1 and 2 for failure to state a cause of action under 12b-6 and then also ruled that my interpretation would be that if any of the dismissals didn't hold that also under 12b-6 the defendants were entitled to qualified immunity. The first count alleged violation of political free speech rights for political activities and count 2 claimed substantive due process violations, both for the same conduct. Just addressing the qualified immunity issue first, this court ruled in Watkins v. City of St. Louis in 2024 that qualified immunity is an affirmative defense. So a dismissal under 12b-6 on qualified immunity grounds will be upheld only when the immunity is established on the face of the complaint. And went on to say that qualified immunity shields public officials from civil liability when their conduct did not violate clearly established statutory or constitutional rights. In this case, it was well established in 1941 and 2013 that the contempt procedure could be used in the state of Missouri only to protect the judicial function of the court. And in the case that we're dealing with here, the contempt proceedings were strictly based on alleged failures to prepare a spreadsheet the way the presiding judge wanted it. It had nothing to do with judicial function. And the Missouri Supreme Court granted writ of prohibition ruling that Judge Privet did not have the authority to initiate or to determine the contempt issues because it didn't involve a judicial function. So the law was clearly established that you can't use... I mean, I think perhaps it would help me if you would say you agreed or not with the proposition that our cases say that you're going to have to show some kind of adverse employment action as one that materially affects the employment terms or conditions. Is that correct? Yes, Your Honor. What was the term or condition of employment that was affected here? This, that the contempt proceedings were initiated by Judge Privet. He was the chief complaining party, the chief witness, and he appointed the prosecutor, and then he denied a motion for change of judge. So in order to avoid being held in contempt, which Judge Privet was clearly going to do, that Betty Grooms then applied for writs of prohibition with the Court of Appeals, which considered it and then denied it, and then with the Supreme Court, which granted a preliminary writ and a final writ. The basis for the contempt would have been that Betty Grooms had not performed her job duties by performing these make work spreadsheets the way that Judge Privet wanted. If that was established, that would have been a basis for her removal from office under the Missouri Misdemeanor in Office Statute, which is a quasi-criminal statute that provides that if an elected clerk of the circuit court fails to perform their duties correctly, this quasi-criminal procedure can be brought against them, and if it's determined that they did not perform their job duties, they would be removed from office. Okay, so how does that connect with First Amendment expression? Well, the, okay, I was addressing the adverse. Yes, I know, I'm asking the right question. On the political expression, Betty Grooms was the longtime political opponent of Alice Bell. They ran for election in 2018 against each other. Betty Grooms as a Republican, Alice Bell as a Democrat. Betty Grooms won. Alice Bell was already a deputy clerk, so she continued working as a deputy clerk for Betty Grooms until Alice Bell married Judge Privet, the presiding judge, in November of 2021. So this was retaliation for an exercise of First Amendment rights. Yes, and discrimination. Okay, thank you. Absolutely, because of political activities and affiliation. I understand. And the district court didn't rule on those grounds, but ruled on the grounds that the district court said there's no adverse employment action here, but I would contend that if you have to incur more than $39,000 in attorney's fees in defending a bogus contempt proceeding, that that's definitely an adverse employment action. It's not the case that supports that. You're right. Is there a case that supports that? I didn't see one cited. As an adverse employment? No, the $39,000, that has a common sense attraction. But it's not the kind of adverse action that I've encountered in case law. So give me a case that says having to spend money to defend yourself from something your employer has accused you of, or HR has accused you of, is adverse action. I can give the court a statute, which I cited earlier, which is the misdemeanor in office statute in Missouri. I understand that. We're not talking a state statute. We're talking a federal statutory clause of action. I would only submit this, Your Honor. I can't cite a case exactly on point, but it's hard for me to imagine that when your job is at risk and you have to spend more than $39,000 just to stay in office to keep your job, that that's not an adverse employment action. In addition. It's not a term. The problem is material effects a term and condition of employment. You're talking about spending money to engage in litigation because you think where the employer is heading will wind up in an adverse action. And it was also a contempt proceeding, which was completely unauthorized. So that's not federal law. Bring a state action for that. All I can say, Your Honor, is the adverse actions were the contempt proceedings against her. The fact she had to defend it. The fact she had to spend money. The fact that Judge Privet also ordered her out of the courtroom in front of other people loudly claiming that he would have the sheriff remove her from office. Alice Bell refusing to comply with her directions to train other employees. All of which happened after the marriage. I see that I'm down to my rebuttal time, which I would like to save if possible unless there's a question. Then I'll wait for rebuttal. Mr. Neely may please the court. I would like you to start where we just left off. I find an awfully attractive notion that the things that our counsel stresses are adverse actions are indeed adverse. And they're expensive. But I'm not sure about the case law as to whether that's what counts as affecting a material term and condition. Do you have some case law help for us? To suggest that it does or the opposite? Either way. Of course I'm not asking you. No, you give me the cases that say it's not. Yes, sir. So I think the cases all uniformly say that it's a change in duties, right? Prestige. Don't give me the general language. I want a fact specific case that refutes the claim of adverse action. The claim that? All the adverse action that's been cited. Yes, sir. It doesn't sound on the surface like a term and condition of employment, but it sure sounds like an adverse effect on your job. Yes, sir. And I think it's difficult to show you the negative of what Mr. DeRee has alleged as. Well, let me put it this way. Yes, sir. I can take the general language from the cases. Yes, sir. And easily say this counts. Okay. You give me the fact specific case that say I'd be wrong if I did that. Yes, sir. If I may, I'll answer that in one second. I think you hit on this point earlier is that this is a state law case, and there is a corollary state law case, and that was what was filed under count three. Yeah, but he wouldn't get attorneys fees for that one, so we're in federal court as usual. Yes, sir. But we also are applying federal law. Yes, sir. I think that the Bonnenberger v. St. Louis Metro Police Department 810F3-1103, which is an Eighth Circuit case from 2016, which specifically talked about. What burger? I'm sorry. Bonnenberger. Oh, yeah. B-O-N-E-N. I may have butchered that. I apologize, Your Honor. And I also cite to Muldrow v. City of St. Louis, and Muldrow is M-U-L-D-R-O-W, which is a Supreme Court case from 2024, also looking at. Yeah, they were wrong in that one. Yes, sir. But to your point, you're right that these things are adverse to her, but they're not related to the terms and conditions of her employment. And also what I think is particularly of interest or should be of interest to this court is that. Or being fired would be. Exactly. And that doesn't happen. Right? There is no termination here. But it sounds like one of your clients wanted it to happen, well, two of them. Well, whether it did or did not, Your Honor, I wouldn't say that it's even before the court. But it's interesting because what you sort of heard was a speculative argument that, well, she would have been held in contempt. And if she had been held in contempt. No, she spent $39,000. That is what is pleaded, yes, sir. In order to get the Supreme Court to say your clients are wrong. Yes, sir. But the Supreme Court did also say that this is a unique situation that has not been brought up before us. It didn't say there was a frivolous position. Yes, sir. On either side. Yes, sir. But she had to spend a lot of money. Well, she also had to do some make work stuff, which obviously took her away from other duties. Which maybe she had to do anyway. Well, yes, sir. And it is a statutorily required duty of her position to have this responsibility. She was right. I haven't studied the record, but I get that impression. I think that there is a suggestion that that is accurate. I would dispute that that is an accurate, Your Honor. But, again, that being said, the idea that, well, she could have been held in contempt. And this almost goes more towards the liberty interest analysis for his count too. Where you are talking about this stigma of being held in contempt. And how under Weingar, how that might possibly trigger some kind of theory of relief. But, again, I would say that it doesn't even go there. Because we are talking about the idea that, well, she might have been held in contempt. And there could be effects to that. And it could result in a misdemeanor in office. And it could affect her reputation. But please keep in mind, Your Honor, and this is in his briefing and petition, or his complaint, that she was reelected in November of 2022 during all of this. So this idea that there is this black mark and this stigma associated with her, I would say it rings a bit hollow. But I'm thinking of these kinds of cases where the employee doesn't want to be transferred. Or doesn't want to particularly location transfer. Yes, sir. And, well, why not? Well, because it's, you know, I can't take my kids to school and blah. You know, there's a lot of what will happen if I have to do this. Yes, sir. So that's not uncommon in these arguments. Yes, sir. And I agree with you in the sense that if there was some, you're back to the adverse employment action, right? Well, you're being transferred. You're being removed. You're being sent to this other branch. And interestingly enough, Your Honor, in the reply brief, appellants cite to the McKeevy-Ruder case, which I sort of get called out to the mat for not citing and presenting to this court. It's an unpublished opinion under Rule 32, I think, A1, that should have been identified to the court. But it also doesn't have presidential value. It was a case that appellants' counsel was involved in. But that's an interesting foil for what's going on here because in that case, these two people actually ran against each other, two elected office holders. And then on the first day, it's sort of game on, right? They move her to a new office. They basically put her in a broom closet, set up security cameras, strip all of her authority. And the court says, okay, yeah, they're looking at it from a motion-to-dismiss perspective as well, saying, okay, well, qualified immunity is not going to apply here. It looks like this might have been politically motivated animosity. And again, that's certainly not what we have here. And although Ms. Bell and Ms. Grooms are from opposite political parties, they are far from longtime political rivals. That's, I don't believe, anywhere before this court. And also Judge Prevett is a Republican and is a career Republican. That's pleaded. Ms. Grooms is a Republican and a career Republican, presumably. So this idea that Judge Prevett has this politically motivated animosity based on Ms. Grooms' political speech four years prior to asking her to do her statutorily required duties I would say falls way outside the realm of anything that could be considered. Well, that goes to a different point, really, doesn't it? Yes, sir. It goes to the motive. Yes, sir. Okay. Yes, sir. And I think that this court has even said, you know, 20 months removed from the event that would warrant retaliation seems to lend sort of an inference that it's not causally related. Yeah, I understand. But before you leave the adverse employment action point, let me ask you this. It seems to me that it's pretty apparent, at the very least, that if this, in fact, proves to have been an adverse employment action because for some reason the maturity affected the conditions in terms of her employment, it's kind of an outlier. And so this really brings up the qualified immunity notion, doesn't it? Yes, sir. I mean, already we're struggling with is this or isn't it? And that is really sort of squarely in the wheelhouse of qualified immunity. Yes, sir. And I think that's exactly why the court provided that secondary analysis to say, hey, look, even if we'll accept the possibility that this is a constitutional violation, it certainly wasn't clearly established at the time. And I think the court relies heavily on the Missouri Supreme Court's opinion where they essentially say, yeah, look, I understand what you were trying to do. I understand that this is her statutorily required duty. And I understand that you have an obligation to make sure that that duty is done. But that doesn't permit you to utilize your contempt powers to enforce that it be done. And so I think that's what the court is saying when they say, well, this is not what the district court is saying when they say, well, this wasn't clearly established at the time, at least based on what the Supreme Court, how the Supreme Court interpreted it. Some evidence of that is there's no sort of analogous case that's been cited. Correct. Yes, sir. No, certainly no robust precedent. Yes, sir. I do believe that to be 100% correct. And, you know, I really didn't want to say very briefly, I know I put in my briefing that I waived oral argument, and so I felt like it would be disingenuous to use up the entirety of my time. And so I do apologize for that. But if you all have any other questions, I'm more than happy to address them for the court. Otherwise, I will get out of here with just 45 seconds remaining. Thank you. Glad you made it through the traffic mess. Goodness, I'm so incredibly sorry, Your Honors. No, no, we were, but our calendar clerk had the same problem. Yeah, I was. She alerted us that, but you made it. Yeah, you know, I've been in the Marine Corps for 15 years, and they kind of give you this, like, if you're early, you're on time. If you're on time, you're late. And if you're late, don't bother showing up kind of mentality. And so I was walking up here, and I was more or less terrified. That's only trial judges. Yeah, that's right. But thank you all. I very much appreciate your time. Thank you. Thank you. Thank you.  Mr. Dury for rebuttal. Thank you, Your Honor. Judge Arnold, I would submit that the fact that what Betty was charged with by Judge Privet was established already as an adverse employment action would be by the misdemeanor statute itself, which says that if a circuit clerk fails to perform his or her duties, that's grounds for removal from office. And that's by statute. Judge Privet is a judge. He presumably knows the law. And the standard for qualified immunity is that the right was clearly established by statute. The conduct, the civil liability, if the conduct did not violate clearly established statutory or constitutional rights, it was clearly established that failure to do your job duties is grounds for removal from office under the Missouri Misdemeanor in Office Statute. You don't think that means federal statutes? Well, it's established as a state statute. I mean, the quote, you said it's clearly established statutory or constitutional law. Right. You don't think that means federal statutes? Well, it's a rhetorical question. Yeah, no, I think that would apply to any. The idea is it's sort of like the one-bite rule for a dog. You know, you get one bite, okay? So clearly Judge Privet knew that if his claim of failure to follow his orders was established as a violation of her duties, that that would have an adverse effect on her employment. It wasn't anything new to him, and that would have been the result. So I would submit that qualified immunity does not apply even on the adverse employment action part of it. My time is up. Thank you very much. Thank you for your answer. Thank you, counsel. The case has been well briefed. An argument has been very helpful in getting us properly focused. We will take it under advisement.